[No. 10882. Department One. June 2, 1913.]

C. O. SANDBERG, *Respondent*, v. LYTLE LOGGING AND MERCANTILE COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—DUTY TO WARN. Where a sniper in logging operations was required to work fast near the path of the haulback line, on a steep hill, where the hook tender looked after the line and warned the men of his crew, the master is not relieved of the duty to give warning of sudden dangers arising, by the fact that the sniper was an experienced woodsman and bound by his knowledge of dangers from the moving cable.

SAME—CONTRIBUTORY NEGLIGENCE—SUDDEN EMERGENCIES. A sniper in a logging camp struck by a sliding log, is not guilty of contributory negligence in not heeding a warning, where a special ver-

[1]Reported in 132 Pac. 647.

dict established that the warning was not given in time, he was caught while in the act of moving, and was absorbed in his work when suddenly confronted with the danger.

Appeal from a judgment of the superior court for Chehalis county, Sheeks, J., entered March 22, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a logging camp. Affirmed.

*W. H. Abel,* for appellant.

*Govnor Teats, Hugo Metzler, Leo Teats, Ralph Teats,* and *Norman S. Richards,* for respondent.

CHADWICK, J.—Plaintiff was employed as a sniper in defendant's logging camp. He was engaged in sniping a log when the haulback line was in motion. The work was progressing on the side of a steep hill, and the line ran over the top or brow of the hill to a platform on the other side. When hauling the line back, the chokers are attached to the main line and drag or whip along the ground. When the chokers were within about thirty feet of Sandberg, according to the estimate of the greater number of witnesses, the choker hook caught on and started a small log or slab which had been broken off a large log. It slid rapidly down the hill and struck Sandberg on the instep, so injuring him that his foot had finally to be amputated. Just as the loose log started (although the jury might have found that it was just before or concurrent therewith) the signalman who was stationed at the top of the hill was warned to stop the line. This warning was given by shouting. The signalman in turn pulled a wire which blew a whistle on the donkey, whereupon the engineer stopped the drum. Almost immediately after this first shout, a second was heard; it was "Look out" or "Get out of the way." It was given by one Costello, a rigging slinger, when he saw the loose log or chunk was moving. Every one on the crew scrambled to a place of safety, except Sandberg, who either did not move or moved but

slightly.   Many facts incidental to this outline were gone
over at the trial and are rehearsed in the briefs; but, from
our view of the case, they are either now immaterial or will
be incidentally referred to in the progress of this opinion.

There was evidence from which the jury was warranted in
finding that the haulback of the line is dangerous to any one
working in or near its path; that the danger lies in just such
possibilities as here became actualities—the movement of
loosened logs and the sweep of the choker.   It is shown, also,
that men have to work on or near the path of this line, and
that the custom pertaining in logging camps is for the hook
tender to keep a lookout for the moving line and to warn and
protect his crew.   The hill was steep, about half pitch, and
the loosened chunk moved rapidly, and we feel that, con-
sidering the whole record, we would not be warranted in
holding, as a matter of law, that the signal or warning of
danger was given in time for Sandberg to extricate himself
from the peril that beset him.   In fact, it is most likely that,
in the instant case, no warning was given until the peril was
imminent.

But it is insisted that Sandberg was an experienced woods-
man (this was a disputed fact) and must have known of the
danger, and was bound by his knowledge; that the moving
cable, which it is admitted made some noise, was as much a
signal of danger to him as it would be to the hook tender
whom respondent charges with a duty of protection; that,
to hold otherwise, would put the unwarranted duty upon ap-
pellant of keeping a man charged with the single duty of
warning Sandberg.   We think the case demands a broader
perspective, in the light of the record showing that the sniper
has to work fast to keep ahead of the rigging crew, and that
the danger in the moving line is largely if not entirely in
the dragging chokers.   The fact that all the witnesses seem
to agree that the hook tender looks after the line and warns
his men, implies that reasonable economy, as well as the due
organization of the large crews of men necessary in logging

operations, demands that work will continue about the path of the line until the element of danger is at hand. The final issue then is, Was a signal or warning given in time? There is evidence to sustain the general and special verdict of the jury that it was not.

It is also argued that Sandberg had opportunity, but did not embrace it. To sustain this contention we would have to ignore the special verdict. But assuming that he had time, as we measure it in our chambers, to get out of the way, we are met by two certainties, one sounding in fact and the other in human nature. There is testimony that respondent was caught by the sliding log while in the act of moving; and, furthermore, we are bound to know that many men absorbed in their work as respondent says he was, when suddenly confronted with a danger, are incapable of instant physical movement.

If we could hold, as a matter of law, that the first signal was given a reasonable time before the warning of actual danger was given, our ruling would of necessity be otherwise; but we have studied this case with more than our usual care because of the earnest conviction of counsel that the law has been misapplied; and reason as we will, we come back to the original premise, and must say that the work was dangerous; that there was a duty to warn; and we cannot say, as a matter of law, that the warning was given in time.

Judgment affirmed.

CROW, C. J., MOUNT, PARKER, and GOSE, JJ., concur.